IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN HOPPES, | : Civ. No.  1:24-CV-1503 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.  Introduction

Dustin Hoppes filed a Title II application for a period of disability and disability insurance benefits on January 27, 2023.   (Tr. 10). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Hoppes was not disabled from his alleged onset date of disability of December 4, 2022, through June 21, 2024, the date of the ALJ's decision.  (Tr. 21).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

Hoppes now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

On January 27, 2023, Hoppes applied for disability insurance benefits, citing an array of physical and mental impairments, including posttraumatic stress disorder ("PTSD"), a traumatic brain injury ("TBI"), vertigo, tinnitus, chronic back and neck pain, migraines, bilateral hip pain, left ankle pain, asthma, and irritable bowels with gastroesophageal reflux disease.  (Tr. 220).  Hoppes was 40 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a military police officer.  (Tr. 20).

With respect to these alleged impairments[2] the record revealed the following: Hoppes was a member of the United States Air Force from 2001 until 2023. (Tr. 1793). The earliest medical evidence on record is a February 2022 report from Hoppes' Commander, Lieutenant Colonel Kathleen Fabrizi, which indicates that in October of 2020, while at work, Hoppes was struck from behind by a motor vehicle and suffered a TBI. (Tr. 1594). Lt. Col. Fabrizi reported that Hoppes was since diagnosed with severe anxiety, vertigo, migraines, recurring nightmares, and insomnia with an ensuing loss of function during the day. (*Id.*). She noted, *inter alia*, that Hoppes was only capable of working "single digit hours" each week, was "unable to complete basic tasks" and that even "sitting at a desk [aggravates] his chronic pain." (*Id.*).

In November of 2022, Hoppes was evaluated at Penn State Health by Certified Registered Nurse Practitioner ("CRNP") Sarah Ganly for asthma and obstructive sleep apnea. (Tr. 935). Hoppes reported to CRNP Ganly that he was tired during the day despite using a CPAP

---

[2] Because Hoppes' appeal focuses on the ALJ's treatment of evidence related to his physical impairments, we will forego discussion and analysis of Hoppes' mental health records and evaluations.

3

machine overnight. (*Id.*). CRNP Ganly diagnosed obstructive sleep apnea and paradoxical insomnia. (Tr. 937). Hoppes received his first Botox injection to treat his migraine headaches from Dr. Weibin Shi at the Hershey Medical Center in January of 2023. (Tr. 929).

In March of 2023, Hoppes again consulted with CRNP Ganly, reporting continued daytime drowsiness and that a recent car accident triggered PTSD-related nightmares. (Tr. 1197). However, Hoppes otherwise reported positive results, including that he was "sleeping much better" with the CPAP, and that he was having less trouble falling asleep with the Lunesta. (*Id.*). In April of 2023, Hoppes received another Botox injection for migraines. (Tr. 1863).

Hoppes reported headaches along with neck and shoulder pain to Dr. Justin Hong in May of 2023. (Tr. 1906). Dr. Hong's examination showed restricted range of motion in Hoppes' head and shoulder as well as soreness to palpation. (Tr. 1907). Dr. Hong diagnosed Hoppes with cervicalgia, myofascial shoulder pain, chronic headaches, anxiety, PTSD, and obstructive sleep apnea. (Tr. 1908). He instructed Hoppes to continue using Effexor, Lunesta, Parzosin, and Rizatriptan. (*Id.*).

4

Hoppes had a consultive physical examination with Dr. Ahmed Kneifati in May of 2023. (Tr. 1575-76). Dr. Kneifati noted Hoppes had a widened gait with short steps, had difficulty walking on heels and toes, could squat only 40%, and had tenderness in his left hip as well as in his spine at C5-6 and L4-5. (Tr. 1578). Dr. Kneifati opined that Hoppes had several postural limitations, including, *inter alia*, that Hoppes could sit for five, stand for three, and walk for two hours in an eight-hour workday, had the ability to stoop, kneel, crouch or crawl only occasionally, and that he could never climb ladders or scaffolds or be exposed to moving mechanical parts. (Tr. 1582-85).

Hoppes began attending acupuncture sessions at Live Well Medicine in May of 2023. (Tr. 1657). He continued through June of 2023 and reported improvements throughout treatment, particularly for his lower extremity pain. (Tr. 1657-96).

In November of 2023, Hoppes consulted with Dr. Kristina Lenkler at the Hershey Medical Center's Sleep Research & Treatment Center. (Tr. 1949). Dr. Lenkler diagnosed Hoppes with nightmare disorder, insomnia disorder, PTSD, and obstructive sleep apnea. (Tr. 1951).

Hoppes returned for a follow up later in the month to discuss techniques for combating nightmares.  (Tr. 1991).  Also in November of 2023, Hoppes had a varicose veins examination at Penn State Health's Holy Spirit Medical Center, which revealed various issues with the veins in Hoppes' legs.  (Tr. 2271-73).  Around this time, Hoppes returned to acupuncture, which reduced his chronic back pain from 7/10 to 6/10.  (Tr. 2286-88).

Hoppes was evaluated by Dr. Hong at Hershey Medical Center in December of 2023.  (Tr. 2071).  Dr. Hong noted Hoppes had restricted range of motion in his neck and shoulder and exhibited soreness to palpation.  (Tr. 2072).  He diagnosed cervicalgia, myofascial shoulder pain, chronic headaches, anxiety, PTSD, and obstructive sleep apnea. (Tr. 2072-73).  Hoppes also received another Botox injection in December 2023. (Tr. 2029).

Hoppes visited the Lebanon, Pennsylvania, Veterans Affairs Medical Center in January of 2024.  (Tr. 2204).  Hoppes' main complaint was a heavy and numb feeling in his right leg, along with chronic hip and back pain. (*Id*.).  Dr. Robert Villare suggested Hoppes undergo MRIs and x-rays to investigate the source of his pain and numbness.  (*Id*.).  Hoppes

received x-rays later that month, which revealed a right L4 pars lysis. (Tr. 2167).  MRIs in February of 2024 returned unremarkable results, save for a right-sided L5 spondylolysis defect.  (Tr. 2166).  Hoppes underwent another Botox injection in March of 2024.  (Tr. 2115).

It is against this factual backdrop that the ALJ conducted a hearing regarding Hoppes' disability application on June 10, 2024.  (Tr. 10). Hoppes and a vocational expert ("VE") both testified at this hearing. Hoppes testified about how a workplace accident caused his TBI and how he has since developed debilitating migraines.  (Tr. 37-45).  The VE first classified Hoppes' past work, then answered hypothetical questions about a claimant with Hoppes' background with specific types of limitations.  (Tr. 46-48).

Following this hearing, on June 21, 2024, the ALJ issued a decision denying Hoppes' application for benefits.  (Tr. 10-21).  In that decision, the ALJ first concluded that Hoppes met the insured status requirement through December 31, 2028. (Tr. 12).  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Hoppes suffered from the following severe impairments: asthma, degenerative disc disease,

7

degenerative joint disease, history of TBI with mild neurocognitive disorder, migraine headaches, PTSD, depression, and anxiety. (*Id.*). At Step 3 the ALJ determined that Hoppes did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13).

Between Steps 3 and 4 the ALJ concluded that Hoppes retained the following residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) frequent postural movements except occasional ladders, ropes, or scaffolds, avoid concentrated exposure to loud noise, vibration, fumes, odors, dust, gases, poor ventilation, dangerous machinery, and unprotected heights, work that is limited to simple and routine tasks, involving only simple, work-related decisions and only occasional interaction with supervisors and the public.

(Tr. 14).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Hoppes' reported, subjective symptoms, and found that Hoppes' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record [.]" (Tr. 15). The ALJ then reviewed the medical record evidence he found supported that conclusion: He referenced Hoppes' shoulder x-rays, which showed only moderate degenerative changes "with the remainder of the joint spaces relatively well maintained." (Tr. 15). The ALJ also pointed to an April 2023 examination with Dr. Elisa Giusto where Hoppes "presented with normal physical examination findings." (Tr. 16). He cited examinations with Dr. Hong in May and December of 2023, noting that at both visits, Hoppes showed restricted neck and shoulder range of motion but had "otherwise normal findings." (Tr. 16-17). Finally, the ALJ concluded that Hoppes' MRI, which showed only a spondylolysis at L5, belied the severity of Hoppes' reported symptoms. (Tr. 17).

The ALJ next considered the medical opinions on record. He was only partially persuaded by Dr. Kneifati's opinion. (Tr. 17-18). Dr. Kneifati opined, *inter alia*, that Hoppes could spend a maximum of three hours standing, and two hours walking, in an eight-hour workday. (Tr. 17). While the ALJ found Dr. Kneifati's opined limitations as to Hoppes' lifting and carrying were persuasive, the ALJ found Dr. Kneifati's

"opinion is otherwise not supported by the claimant's physical examination findings and is not consistent with ... subsequent treatment notes, including [Hoppes'] response to Botox treatment and his overall stable imaging findings and recommendation for ongoing conservative treatments." (Tr. 18).

The ALJ found the opinions of Dr. Glenda Cardillo and Dr. David Clark, the state agency medical consultants, persuasive. (Tr. 18). Dr. Cardillo's opinion mirrored Dr. Kneifati's with regard to lifting and carrying but found Hoppes capable of "stand[ing] and/or walk[ing] for six hours in an eight-hour workday." (*Id.*). Dr. Clark concurred with Dr. Cardillo's opinion. (*Id.*). The ALJ found these opinions were supported by Hoppes' treatment records and consistent with other evidence in the record, including Hoppes' response to Botox treatment and his February 2024 MRI. (Tr. 19).

The ALJ then found at Step 4 that Hoppes could not perform his past work but, at Step 5, found that he could perform other jobs that existed in significant numbers in the national economy, such as machine feeder, press tender, and electronics worker. (Tr. 21). Having reached

these conclusions, the ALJ determined that Hoppes had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 21).

This appeal followed. (Doc. 1). On appeal, Hoppes challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 14 at 8-19). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision is supported by substantial evidence, and we will affirm the decision of the Commissioner.

III.  **Discussion**

A. **Substantial Evidence Review – the Role of this Court**

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must

sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ

must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record,

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in January of 2023, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and

19

supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir.

2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### E. This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek*, 139 S. Ct. at 1154.  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Hoppes' first claim of error relates to the occupations the ALJ found he could perform.  The ALJ, with assistance from the VE, found Hoppes could work as a machine feeder, press hand, or electronics worker.  (Tr. 21, 46-49).  Hoppes argues that these occupations are incompatible with limitations included in his RFC—specifically, needing to avoid concentrated exposure to vibrations and dangerous machinery.  (Doc. 14 at 9-10).

As to the plaintiff's argument that these jobs conflict with the RFC limitations, we first note that "[t]he Commissioner can [] rely on testimony from a VE to meet its step-five evidentiary burden."  *Zirnsak*

*v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (citing 20 C.F.R. § 404.1566(e)). This is so where a common issue arises and the "VE's testimony conflicts with other sources of information relied on by the Commissioner, namely the DOT." *Id.* In this scenario, an ALJ is required to resolve any discrepancy or conflict by: "(1) ask[ing], on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit[ing] a reasonable explanation' where inconsistency does appear, and (3) explain[ing] in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127).

Here, the ALJ posed a hypothetical to the VE, which included Hoppes' limitations regarding exposure to vibration and dangerous machinery. (Tr. 46). We again note that the ALJ was entitled to rely on the vocational expert's testimony. *Zirnsak*, 777 F.3d at 616. Additionally, Hoppes' counsel did not object to the qualifications of the VE at the administrative hearing, nor did he ask any questions regarding the three occupations identified by the VE and if there was any discrepancy between the jobs identified and Hoppes' limitations concerning exposure to vibration and dangerous machinery. His belated

25

contention that certain jobs identified as Step 5 "appear to" conflict with the restrictions in the RFC is unavailing and does not require a remand.[3]

Hoppes next argues that the ALJ improperly rejected the opinion of Dr. Ahmed Kneifati. Hoppes admits that the ALJ discussed the supportability and consistency of Dr. Kneifati's opinion, but argues he was insufficiently detailed in that discussion to satisfy statutory obligations. This argument is unavailing.

The ALJ wrote that:

> [Dr. Kneifati's] opinion is partially persuasive as to the claimant's ability to lift and carry, which is supported by the claimant's presentation that day and is consistent with the claimant's own reported ability to lift and carry. However, Dr. Kneifati's opinion is otherwise not supported by the claimant's physical examination findings and is not consistent with the claimant's subsequent treatment notes, including his response to Botox treatment and his overall stable imaging findings and recommendation for ongoing conservative treatments.

---

[3] We note that the substantial portions of Hoppes' reply brief repeat his brief in support word-for-word. (*Compare* Doc. 14 *with* Doc. 19). As we have recently reminded counsel, there is no obligation to file a reply brief. *Geibe v. Bisignano*, No. 1:24-CV-1400, 2025 WL 1570000, at *6 n.2; *see also CSX Transp. Co. v. Novolog Bucks Cnty.*, 2006 WL 1451280, at *17 n.17 (E.D. Pa. May 24, 2006) ("[Reply briefs] are not for reiterating word for word one's prior argument.").

(Tr. 18).

In our view, the ALJ's treatment of Dr. Kneifati's opinion is supported by substantial evidence. While the plaintiff urges us to find that the medical evidence supported Dr. Kneifati's more restrictive standing and walking limitations, we view this as a request to reweigh the evidence, which we may not do. *Chandler*, 667 F.3d at 359. Moreover, the underlying logic of the ALJ's decision is apparent. While Dr. Kneifati found Hoppes was limited to five total hours a day of combined standing and walking, other medical opinions suggested that Hoppes was capable of light work with lesser restrictions. (Tr. 18-19). The ALJ explained why he found the state agency consulting opinions persuasive and discounted these limitations opined by Dr. Kneifati, citing to objective record evidence to support his conclusions. Accordingly, we conclude the ALJ's treatment of the medical opinions is supported by substantial evidence.

Finally, Hoppes claims that the ALJ improperly evaluated his subjective symptoms, in that the ALJ failed to credit the abnormal findings in the record, relied too heavily on Hoppes' activities of daily

living, and failed to consider Hoppes' work history.  First, we view this argument, particularly as it relates to the ALJ's evaluation of medical evidence, as another request to re-weigh the evidence, which we cannot do.  *Chandler*, 667 F.3d at 359.  As to activities of daily living, we note that an ALJ is permitted to consider a claimant's activities of daily living when determining the plaintiff's credibility.  *See Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding no error where the ALJ considered the claimant's activities of daily living and found the claimant not entirely credible) (nonprecedential).  Hoppes fails to articulate how the ALJ's consideration of those activities was error.  Additionally, the ALJ did, in fact, reference Hoppes' work history in considering his subjective symptoms.  (Tr. 20).  Hoppes fails to explain how a more favorable consideration of this factor demonstrates that his disability is work-preclusive, such that we should find the ALJ's decision is not supported by substantial evidence.  We therefore find no basis for a remand.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 11th day of July 2025.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

29